IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

Mark A. Green
Lori D. Green
848 National Road SE
Hebron, OH 43025

    Plaintiffs,

vs.

Valentine & Kebartas Inc.
aka Valentine & Kebartas
15 Union Street
Lawrence, MA 01840

Chase Bank USA, NA
800 Brooksedge Blvd.
Westerville, OH 43081

    Defendants.

Case No. 09CVH 1 366

Judge

Category H

## COMPLAINT
(Jury Demand Endorsed Hereon)

Plaintiffs Mark and Lori Green, for their complaint against the defendants, state the following:

### I. Nature of the Action.

This case arises from a dispute between the Greens and Valentine & Kebartas ("V+K"), and its principal, Chase Bank USA, NA ("Chase"), relating to an agreement to resolve a credit card account balance, breach of that agreement, and improper, wrongful, abusive, and illegal collection and false credit reporting actions in spite of the agreement.

### II. Jurisdiction, Venue and the Parties.

2.     Plaintiffs resided or conducted business in Franklin County, or at the above address, at all times material to these claims.

3. Defendant Valentine & Kebartas is believed to be a foreign corporation which at times conducts business as Valentine & Kebartas without indication of its corporate status. At all times material to these claims, V+K was an authorized agent on behalf of Chase. Defendant Chase is believed to have once been an Ohio corporation when the subject credit card account was opened, but has since relocated to another state.

4. This court has both personal and subject matter jurisdiction over the parties and venue is proper pursuant to Rule 3(B) of the Ohio Rules of Civil Procedure.

### III. Facts Common to All Claims.

5. Mark Green opened a credit card account with Chase's predecessor Bank One in 1985. In 2005, the Greens had financial problems which made it difficult for them to meet their financial obligations. The Greens fell behind on payment of the subject credit card account.

6. In September, 2005, the Greens received a letter from V+K dated September 8, 2005, demanding payment in full of what it represented as the then existing balance due on the credit card of $16,547.45. This amount actually included approximately $7,000 or more of charges, fees, and interest which was not actually due under the credit card agreement.

Chase then sent another letter dated September 12, 2005, in which V+K stated that it was a legally authorized representative of Chase, again seeking payment of $16,547.45, but this time proposing an agreement that if the terms of a lump sum up front followed by monthly payments of $350 thereafter were "successfully met, your account will be placed into repayment status and no further collection activity will be taken."

7. Under duress and in fear of what the defendants might do to them, the Greens agreed to the proposal and made two separate lump sum payments of $1,000 up front and have

continued to make the monthly payments of slightly in excess of $350 under the agreement. As part of that agreement, Chase agreed to accept the agreed payments in exchange for discharging the remaining balance due along with any other penalties or interest alleged to be due and owing.

In addition, Chase and V+K further agreed to place the account in repayment status and stop any further collection efforts, and to stop any further derogatory and negative credit reporting.

As recently as late December, 2008, the Greens received a letter from Chase indicating that it intends to continue seeking payments despite the original agreement in 2005 which will shortly be paid in full.

8. Since October 2005, the Greens have made all payments under the agreement.

9. In January 2008, the Greens were contacted by V+K by telephone, specifically a woman named Darcy called and spoke with Lori Green. Despite the above agreement, V+K demanded that the Greens pay the remaining balance due at that time immediately in full.

10. Darcy told Lori Green that they wanted payment in full now. Lori explained that there was an agreement in place and that Darcy was mistaken, but to no avail.

11. A few days later, Darcy called Mark Green at his place of employment and left a voicemail message demanding payment in full of the amount $5,302.42.

12. Mark returned the call and got a woman named Lilly who went off on Mark, was extremely rude, abusive, aggressive, unprofessional and threatening. She told Mark that she was recording their conversation and that she wanted payment in full by January 25, 2008. She told Mark that this was "not a car loan" and said that she had checked Mark's credit and that he could get a loan to pay them now.

3

Mark was stunned because the woman would not listen to his explanation of the status of the agreement and his account. Nonetheless, V+K threatened to take legal action necessary to collect the remaining balance in full, despite the agreement and without any legal authority or basis to make such a threat. Lilly told Mark that if he did not call back and provide either a credit card or checking account that they would take legal action to collect what they believed was the balance due.

13. At the time, the Greens were using a credit counseling service named CCCS to make the payments to Chase and V+K. After the discussion with V+K through Lilly, the Greens again contacted CCCS to again confirm that they had a binding agreement with V+K and Chase since 2005 as noted above.

14. CCCS reported that V+K called in January wanting a "new" agreement. The Greens refused to discuss a new agreement and demanded that V+K and Chase honor the original agreement reached in 2005 and under which the Greens had been timely making payments since then. The defendants refused, and then increased their collection efforts.

15. Numerous calls were made to the Greens both at work and at home by V+K in an effort to collect the full amount by January 25, 2008. V+K used an automated caller to place calls to the Greens.

16. The Greens were then forced to hire legal counsel to attempt to resolve the matter. V+K responded by reporting in early March 2008 that from "time to time Chase" requires an "upgrade payment" in order to "get more money," which would explain and justify the collection efforts throughout January and February 2008. V+K reported at that time that it "doesn't know if it had an agreement" with the Greens which would have prevented the collection efforts and

demands upon the Greens for more money.

17. The Greens also learned that the defendants had been making derogatory credit reports about the account, including but not limited to, the assertions that it was delinquent and overdue by over 180 days, and not reflecting the agreement terms for repayment. The derogatory credit reporting by the defendants has seriously damaged the Greens' credit rating, especially Mr. Green's credit rating. The Greens were denied credit and loans as a result.

18. Since then, neither defendant has done anything to correct or repair the derogatory and false credit reports about the Greens.

19. The Greens have continued to honor the original and only agreement with V+K and

Chase. In summer 2008, V+K claimed that it had "returned" the account to Chase. Chase reported to the Greens that it had not received the June 2008 payment which had been made to V+K pursuant to the agreement.

20. The defendants have also charged an excessive interest rate and, apparently, penalties or charges, exceeding approximately $7,000, which was never agreed by the Greens. The Greens, to date, have paid more than was required under the original credit card agreement or the agreement reached in 2005 due to these excessive charges and interest rate. The Greens have continued to make the payments under the 2005 agreement in fear of what the defendants might do to them or their credit ratings if they failed to make the payments.

### Count One - Violations of the Fair Debt Collection Practices Act, Ohio Consumer Sales Practices Act, and Fair Credit Reporting Act

21. Plaintiffs reallege paragraphs 1 through 20 above as if fully restated herein.

22. Defendant V+K, through its actions as described more fully above, violated numerous provisions of the Ohio Consumer Sales Practices Act, as codified under R.C. 1345.02-.03, and the Fair Debt Collections Practices Act, 15 U.S.C. §1692 *et seq.* by its unauthorized, illegal, and improper collection efforts against the plaintiffs. They have committed, among others, multiple unfair and deceptive as well as unconscionable practices and acts relative to their actions in falsely alleging that there was a balance due; by rudely, aggressively, and illegally attempting to collect money when there was none due; by threatening legal action when none was allowed or available; by reneging and failing to honor an agreement to resolve the account reached over two years earlier; and by making false and derogatory credit reports.

Both defendants' actions, as described more fully above, also constitute violations of the Fair Credit Reporting Act as codified at 15 U.S.C. §§1681s-2, 1681n, 1681o, *et seq.* which in turn are also violations of the OCSPA. Neither defendant was entitled to access the Greens' credit or make false or derogatory reports concerning their credit.

23. As a direct and proximate result of the defendants' respective violations of the OCSPA, FCRA, and/or FDCPA, the plaintiffs incurred and suffered compensatory and punitive damages including out of pocket damages, negative and adverse credit reports, lost credit and loans, and a damaged credit rating and reputation, attorney fees and expenses, and other related damages exceeding $25,000 to be proven at trial.

### Count Two - Slander and Declaratory Relief

23. Plaintiffs reallege paragraphs 1 through 22 above as if fully restated herein.

24. The defendants have knowingly and intentionally published false reports and information about Mr. Green, the subject credit card account, and the agreement reached in 2005

to third parties, which constitutes both libel and slander under Ohio law.

24. The defendants have also slandered Mr. Green's credit rating by issuing false and negative reports to third parties. The defendants have also improperly slandered Mr. Green by falsely reporting him as seriously late on payments when they knew or had good reason to know that this was not true. As a direct and proximate result, his credit rating and reputation have been injured, among other damages not yet fully determined.

The plaintiffs request an order requiring that the false and improper credit reports and information be corrected and eliminated from all credit reporting agencies as it concerns the Greens.

### Count Three - Negligent and/or Intentional Misrepresentation

25. Plaintiffs reallege paragraphs 1 through 24 above as if fully restated herein.

26. The defendants have either negligently or intentionally made representations to and about Mr. Green concerning the subject credit card, amounts due, and the agreement which were false and which they knew or should have known were false. Mr. Green and others relied on these representations. The defendants were either negligent or intentionally misleading by making false reports, by failing to honor an agreement to resolve the credit card account, by claiming that more was due than actually was under the original credit card agreement, and by threatening legal action when that was not proper due to the agreement in place.

27. The defendants provided information known to be false and inaccurate, designed solely to hurt the plaintiffs in order to force them to pay more money which was not due. They have also failed to correct the information which was provided to credit reporting agencies about Mr. Green in violation of the statute, and allowed the false information to be maintained by the

7

credit reporting agencies. The defendants have not taken action to correct the reports or the information.

28. As a direct and proximate result of the misrepresentations, the plaintiffs have been damaged in an amount exceeding $25,000 to be proven at trial.

### Count Four - Breach of Contract

29. Plaintiffs reallege paragraphs 1 through 28 above as if fully restated herein.

30. In October 2005 or thereabouts, the plaintiffs and defendants reached an agreement under which the plaintiffs were to make certain payments on a credit card account in exchange for which the defendants were to forebear from any further collection efforts on the credit card account, refrain from any derogatory credit reports and to consider the account as in repayment status, and to discharge any further obligation on the account.

31. The plaintiffs have honored the agreement and made all required payments since 2005.

32. The defendants breached the agreement by among other things taking additional collection efforts against the plaintiffs, by issuing negative credit reports, and by failing to report the account as in repayment status. As a direct and proximate result, the plaintiffs have incurred damages exceeding $25,000 to be proven at trial.

**WHEREFORE**, plaintiffs Mark and Lori Green hereby demand judgment against Valentine & Kebartas Inc., Valentine & Kebartas, and Chase Bank USA, NA, jointly and severally where applicable, in an amount exceeding $25,000 for both compensatory and punitive damages; treble damages where appropriate; interest on all damages from October 31, 2005; an order that the defendants be required to correct the credit record and reports concerning the

Greens; reasonable attorney fees; costs of this action; and whatever further relief this court deems just and appropriate.

Respectfully submitted,

*[signature]*

James P. Connors, Esq. (0034651)
**LAW OFFICES OF JAMES P. CONNORS**
326 South High Street, Suite 400
Columbus, Ohio 43215
(614) 221-6868
FAX (614) 221-6889
Email: JClaw221@aol.com
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a jury of eight (8) for all triable jury issues contained herein and any claim or defense asserted in this action.

*[signature]*

*Counsel for Plaintiffs*